IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| Plaintiff | * | CRIM NO.    LKG 24-CR-00187-1 |
| vs. | * | |
| FODE SITAFA MARA | * | |
| Defendant. | * | |

## FODE MARA'S MOTION FOR REVIEW OF DETENTION ORDER, MEMORANDUM OF LAW IN SUPPORT, AND FACTORS FOR CONSIDERATION

COMES NOW, the Defendant FODE SITAFA MARA ("MARA"), by and through undersigned counsel and pursuant to the United States Code, the United States Constitution, the common law and case law supporting such, respectfully files this motion and moves this Court pursuant to 18 USC §§ 3142(e)(1), 3142(f)(1) and 3145(b) to revoke the order of detention issued by Magistrate Judge Ajmel Qureshi on June 14, 2024.  *See* ECF 14.  In its place, this Court should issue a new order releasing MARA under conditions that will impose the "***least*** restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

The Act provides that a defendant may be detained before trial if, after a hearing, a judicial officer determines by "clear and convincing" evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community." 18 U.S.C. § 3142(e).  Among the factors to be considered are: (1) the nature and

circumstance of the offense charged; (2) the defendant's history and personal characteristics; (3) whether, at the time of the offense, the accused was on probation or parole; and (4) the nature and seriousness of the danger to any person or the community posed by the individual's release.  *See* 18 U.S.C. § 3142(g)

As discussed more fully below, the United States chose to present evidence at the detention hearing that MARA was both a flight risk and a danger to the community.  ***See*** **Ex. A** [ECF 17 (Transcript)] at 12 lines 11-14.  The question as to the government's request for detention on safety-of-the-community grounds is whether there is clear and convincing evidence that MARA, with his passports being held by the Court, confined to his brother-in-law's home under 24/7 lockdown, under the third-party custodianship of his brother-in-law, and required to obtain permission from Pretrial Services for any departure from the home, MARA would pose an "identified and articulable threat to an individual or the community." *United States v. Salerno*, 481 U.S. 739, 751 (1987).  *See also, e.g., United  States v. Bendann*, Case No. 23-cr-278-JKB, at *2-3 (Sept. 7, 2023) (holding that the government had failed to explain, let alone prove by clear and convincing evidence, why the specific release conditions proposed by the defense would not be adequate to alleviate the specific danger to a particular alleged victim the government had contended would be endangered by release).

Defendant is currently awaiting trial which may occur as late as June 2025.  In addition, MARA has just been moved by the United States Marshals to the eastern shore of Maryland in Worcester County, making access to his attorney even more difficult.[1]  As MARA still maintains his presumption

---

[1] MARA was previously detained at the Chesapeake Detention Facility ("CDF") in Baltimore, Maryland.  The new facility is nearly two hours away from the Greenbelt Courthouse.

of innocence throughout the trial, the government must prove any facts in support of such a requested finding "by clear and convincing evidence." Id. § 3142(f)(2)(B). The burden of persuasion that no condition or combination of conditions will reasonably assure appearance and community safety remains with the government.

Upon its *de novo* review, this Court should consider Mr. Mara's history and characteristics, supportive family and friends, and record of compliance. Once the court examines the record, it should hold that home detention with electronic monitoring, under the supervision of his brother-in-law, is sufficient to assure MARA's appearance at trial and the safety of the community. As discussed below, this is MARA's first time being charged with a crime. Prior to his voluntary surrender for arraignment, MARA made extraordinary efforts to comply with the law, stay in touch with prosecutors, and appropriately defend his case. To be sure, MARA's limited experience with pretrial detention has been traumatizing. If released, MARA would take no action that could jeopardize his pretrial liberty. Any risk of flight or danger is mitigated by home detention and electronic monitoring, as supported by his prior forbearance from travel once he became aware that he was a target of the government. The government cannot show otherwise. Accordingly, the Court should revoke the detention order and release Mr. Mara with conditions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.      On June 6, 2024, the Defendant was charged in a seven-count Indictment. The charges included five counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. § 2241(c); one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); and one count of Obstruction of Justice, in violation of 18 U.S.C. § 1512(c)(2). *See* ECF No. 1.

2.      On June 10, 2024, the Defendant had his initial appearance and arraignment before the Honorable Magistrate Judge Timothy J. Sullivan.

3.      At that hearing, the Government requested pretrial detention. At his request, the Court granted the Defendant a four-day continuance to prepare. *See* ECF 4, and 6.

4.      On June 14, 2024, following a hearing, Magistrate Judge Ajmel Quereshi ordered the Defendant's detention pending trial.  *See* ECF 14.

5.      Defendant Mara, age 39, was born on November 11, 1984, in Guinea.

6.      MARA is a United States citizen who was living in Burkina Faso in Western Africa at the time of the events described in the Indictment.

7.      Mara came to the U.S. in 2016 and was naturalized as a citizen in 2019.

8.      Since August 2022, MARA's spouse was assigned to the U.S. Embassy in Ouagadougou as an Agricultural Officer with the U.S. Agency for International Development ("USAID").

**9.**      Defendant MARA first arrived in Burkina Faso on or about August 6, 2022.

10.      From 2022 to November 2023, he resided with his wife in Burkina Faso.

11.      Defendant has a valid U.S. and a Guinean passport that is currently being held by Mara's brother-in-law, and has been offered to the Court in lieu of release

12.      Mr. Mara is in good physical health. He has never been on parole or probation.  And has no prior contacts with law-enforcement.

13.      Mara is currently being held at the Detention Center in Worchester County, Maryland.

## **LEGAL ANALYSIS**

A district court reviews a Magistrate Judge's ruling on pretrial detention *de novo*. *See* 18 U.S.C. § 3145(b) ("If a person is ordered detained by a magistrate judge . . . the person may file, with the court

having original jurisdiction over the offense, a motion for revocation or amendment of the order."). *See also, e.g.*, *United States v. Bendann*, Case No. 23-cr-278-JKB at *2 (Sept. 7, 2023) ("When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions of release.")(citations omitted).

The Bail Reform Act (the "Act") governs the release or detention of a defendant pending trial in federal court. 18 U.S.C. §§ 3142 et seq. The enactment of the Bail Reform Act of 1984 was driven largely by a push to authorize pretrial detention where, even if a defendant did not present a risk of flight, the court believed there was sufficient risk that the defendant, if released, would pose a danger to the community. *See, e.g.*, Hon. Donald P. Lay & Jill De La Hunt, *The Bail Reform Act of 1984: A Discussion*, 11 William Mitchell L. Rev. 929, 933, 936-37 (1985).

At the time, the Supreme Court was concerned that permitting detention for dangerousness violated the Fifth Amendment's Due Process Clause or the Eighth Amendment's prohibition on excessive bail. Congress, through the Bail Reform Act, concluded that pretrial detention based on prospective dangerousness in certain circumstances was appropriate. In *Salerno*, the Supreme Court rejected the petitioners' constitutional challenges—but only because Congress had imposed a robust suite of limitations and procedural protections. These limitations and protections were crucial to the Supreme Court's approval of the Act, particularly given that the government and courts are prohibited from employing pretrial detention for any purpose related to punishment, ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). S*ee Bell v. Wolfish*, 441 U.S. 520, 536 (1979)., and the Act of course did not "modify[] or limit[] the presumption of innocence," 18 U.S.C. § 3142(j).

5

The Act was held facially valid because of its inclusion of various procedural safeguards, including three that are worth special attention. First, the Act imposes a strict standard, limiting pretrial detention to circumstances where there is "no condition or combination of conditions" short of detention that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In analyzing whether there is any set of conditions that would provide such reasonable assurance, courts must consider the nature and circumstances of the offense charged, the weight of the evidence, the person's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* § 3142(g).

Second, the Act burdens the government to prove the absence of *any* arrangement, short of full-blown detention (*i.e.,* even the inadequacy of home detention or confinement with location monitoring and other conditions), that would "reasonably assure" the court that the person will appear as required and not endanger the safety of other people or the broader community while awaiting trial. *Id.* § 3142(e)(1). After all, the Act requires that courts impose the "*least* restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B).

The existence of what is sometimes called a "presumption of detention" neither lifts, nor alleviates, that burden of persuasion. Where, as here, the nature of the offense triggers such a "rebuttable presumption . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(e)(2),[2] the defense must come forward with at least

---

[2] On June 6, 2024, a grand jury indicted the defendant on seven felony counts: five counts of Aggravated Sexual Abuse of a Minor in violation of 18 U.S.C. § 2241(c); one count of Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b); and one count of Obstruction of

some evidence that there *are* conditions that would "reasonably assure the appearance of the person as required and the safety of the community," *id.* § 3142(e)(3). *See, e.g.*, *United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020) ("The presumption of detention places a limited burden of production—not a burden of persuasion[—] on the defendant to come forward with evidence that he does not pose a danger to the community or a risk of flight.") (cleaned up, citations omitted).

Often that evidence takes the form of a proposed plan for conditions of release to assure the court that the defendant will appear, and not pose a danger to the community, while awaiting trial. Regardless of whether the defense comes forward with such evidence, and although the presumption even if rebutted "remains a factor to be considered" in assessing the adequacy of proposed conditions of release, *see, e.g.*, *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011), at all times the burden remains on the government to prove the absence of any arrangement short of detention that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(e)(1), (g).[2]

Third, Congress concluded that the government, when seeking detention for prospective dangerousness, must prove any facts that it contends supports such a finding by "clear and convincing evidence." *Id.* § 3142(f)(2). This evidence can take any number of forms, and this heightened burden does not apply to detention on grounds of risk of flight. But where, as here, the government's basis for seeking pretrial detention is a fear that the defendant will endanger the community while awaiting trial, it must prove by clear and convincing evidence that the defendant "presents an identified and articulable threat to an individual or the community." *Salerno*, 481 U.S. at 751.

_____

Justice in violation of 18 U.S.C. § 1512(c)(2).  *See* ECF 1.  A rebuttable presumption arises under § 3142(e)(3).

Some circuits (not the Fourth Circuit) have suggested that a defendant's failure to produce any proposal for release or other evidence is enough to permit the presumption to alone to justify a detention order, relieving the government from any further showing of the absence of adequate conditions of release. *See, e.g.*, *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) (noting in dicta that "[t]he clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness").

But the Act itself, and its legislative history, reveal that in all cases, even where a rebuttable presumption has not been found to be rebutted, the burden remains on the government to prove (by a preponderance of the evidence as to risk of flight, and clear and convincing evidence as to prospective dangerousness, *see infra*) that no arrangement short of detention would reasonably assure appearance and community safety. 18 U.S.C. § 3142(g); S. Rep. 98-225, at 23 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3206 ("Subsection (g) enumerates the factors that are to be considered . . . *whenever* a person is to be released or detained under this chapter") (emphasis added).

The Supreme Court in *Salerno* upheld the Act's authorization of pretrial detention for prospective dangerousness because of the procedural and substantive protections included in the analysis did not offend due process. The Salerno Court reasoned that the Act (1) "carefully limits the circumstances under which detention may be sought to the most serious of crimes," *Salerno*, 481 U.S. at 747 (citing 18 U.S.C. § 3142(f));  (2) "[t]he arrestee is entitled to a prompt detention hearing;" (3) "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act," *id.* (citing 18 U.S.C. § 3161 *et seq*.); and (4) "the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination," *id.* at 751.

In this case, as noted above, the government moved for detention on grounds of risk of flight and danger to the community. *See* ECF No. 11 (Memo), 13 (detention hearing), 14 (order) and 17 (transcript). *See* Ex. A. At the hearing, the defense proposed a detailed, robust and restrictive plan for home confinement:

Thus, insofar as the government sought detention on dangerousness grounds, its burden—as required by the Bail Reform Act before the Court could consider detaining MARA based on danger—was, and is, to prove, by clear and convincing evidence, that the Home Confinement Proposal would *not* "reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government urged that the question for the Court is whether MARA "is a danger to the community."

 But the question in this circumstance is not whether MARA, if released on his own recognizance with no supervision, or with conditions short of the defense's proposal, might pose a risk to others. The defense did not propose such unconditional release. Rather, the question as to the government's request for detention on safety-of-the-community grounds is whether there is clear and convincing evidence that even with his passports being held by the Court, and when confined to his brother-in-law's home under 24/7 lockdown, under the third-party custodianship of his brother-in-law, required to obtain permission from Pretrial Services for any departure from the home, MARA would pose an "identified and articulable threat to an individual or the community." *Salerno*, 481 U.S. at 751. *See also, e.g.*, *United States v. Bendann*, Case No. 23-cr-278-JKB at *2-3 (Sept. 7, 2023) (holding that the government had failed to explain, let alone prove by clear and convincing evidence, why the specific release conditions proposed by the defense would not be adequate to alleviate the specific danger to a particular alleged victim the government had contended would be endangered by release).

The government proffers a story about how a woman that MARA was allegedly having extramarital relations with denied such a relationship.   And furthermore, how the alleged untruth was a deliberate attempt by MARA to send the government investigators on a wild goose chase.  *See* **Ex. A** pp 14-17.  But this proffer carries no weight because it is not unusual for someone accused of having such a relationship to be untruthful about such a relationship, which is not in MARA's control.  Furthermore, there is no evidence, clear and convincing or otherwise, about Mara collecting phones from the mother or the alleged victims.  As a result, the government's request for detention without release must be revoked and MARA should be given terms of release pending trial.

## <u>CONCLUSION</u>

For all these reasons, Defendant respectfully requests that this Court revoke the current detention hearing order and permit MARA to be released on reasonable security conditions that would assure the twin goals of reducing risk of flight and safety to the community.   The government has not proven by clear and convincing evidence that there are no conditions that would keep which can reasonably assure the safety of the community.  Accordingly, the Bail Review Act requires that the Defendant be released on conditions requested.

Respectfully submitted,


/s/ Michael Rothman
Michael S. Rothman
USDC  MD Bar No. 14568
226 N. Adams St.
Rockville, Maryland 20850
Telephone:  (301) 251-9660

September 16, 2024

Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 25 August 2024, a copy of the foregoing was served on the following by the CM/ECF electronic filing system :

**Ranganath Manthripragada**
Office of the US Attorney
6500 Cherrywood Ln Ste 400
Greenbelt, MD 20770-1249
ranganath.manthripragada@usdoj.gov

**Adam William Braskich**
DOJ-Crm
Child Exploitation and Obscenity Section
1301 New York Ave. NW
Ste 11th Floor
Washington, DC 20530
202-262-6690
Fax: 202-514-1793
Email: Adam.W.Braskich@usdoj.gov

/s/ Michael Rothman
Michael S. Rothman