IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| vs. | *   Case No. LKG 24-00187 |
| FODE MARA | * |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PREVIOUSLY FILED MOTION AND MEMORANDUM TO DISMISS INDICTMENT FOR LACK OF JURISDICTION

The Defendant, by and through his attorney, Robert C. Bonsib, Esquire, respectfully submits this supplemental memorandum and, in furtherance thereof, states as follows:

## PROCEDURAL BACKGROUND

The Defendant, Fode Mara ("Mara") through prior counsel, filed at ECF #30, *Defendant Fode Mara's Memorandum of Law In Support Of His Motion To Dismiss the Indictment For Lack Of Jurisdiction Or, In The Alternative, For A Bill Of Particulars.*

Mara respectfully submits that the arguments in the Mara's prior filing are meritorious and support his request that the Court dismiss the indictment in this matter for lack of jurisdiction.

This filing will highlight and supplement the previously filed memorandum.

## FACTUAL BACKGROUND

In 2022 Mara accompanied his wife, Hillary Mara ("Hillary") to her USAID mission assignment to Ouagadougou, Burkina Faso ("BF"). The cable confirming

Hillary's assignment was attached to Mara's previously motion as Exhibit #1 at ECF #30. That cable noted that "SPOUSE: FODE MARA WILL ACCOMPANY EMPLOYEE TO POST."

The residence where the government alleges that Mara engaged in the conduct charged in the indictment was the subject of a lease between a private party and the United States. This was a contract between the United States and a private entity, not the government of BK. There is no indication in the record of these proceedings that the government of BK lacked jurisdiction to investigate and prosecute for any conduct that might occur at this private residence. Nor is there any indication that there was any agreement or other document executed between the United States and BK that would establish that BK ceded its law enforcement authority or other jurisdiction for any conduct that may have occurred at the premises.

Unlike many of the cases cited by the parties in the memoranda filed in this case, this was not a military premises nor premises subject to any agreement yielding exclusive or even concurrent jurisdiction to the United States.

The government has the affirmative burden to establish the jurisdiction of the United States to prosecute this allege extra-territorial conduct. It is this burden that the government must establish through an evidentiary record and with evidence that rebuts the presumption against the United States having jurisdiction to prosecute for conduct occurring in BK.

As *United States v. Morton*, 314 F. Supp. 2d 509, 512 (2004) noted, "unless a more expansive intent appears, acts of Congress are presumed to apply only within the territorial limits of the United States." *See also*, *United States v. Gatlin*, 216 F.3d

207, 209 (In determining whether a statute applies extraterritorially, we are guided by a general presumption that Acts of Congress do not ordinarily apply outside our borders)

This was not a matter where the alleged victims were citizens of the United States. The alleged minor victims were citizens of BK and the interest in protecting the alleged victims and securing justice for any alleged wrongdoings against the citizens of BK lies with the government and law enforcement authorities of BK.

In developing the factual record in this matter, the following are the some of the significant operative facts:

(i)     Mara was not part of the "mission" of USAID nor part of Hillary's assignment in BK - he was not part of the "assigned mission;"

(ii)    Mara had no status as a diplomat and his treatment during his presence in BK was, in fact, treatment more akin to being a citizen of BK;

(iii)   Mara did not have diplomatic status;

(iv)    Mara was advised that he was not authorized to receive security briefings after having received them for a period of time and was advised that it was a mistake and oversight that he received any security briefings;

(v)     Mara had secured an employment position as a coach during the first few months that he was in BK and only later after being in BK for approximately 3-4 months, and only with the sponsorship of Hillary, was he permitted a non-diplomatic, part-time, maintenance type employment opportunity;

  (vi) Mara was only permitted unescorted access to the initial common access areas of the actual Embassy and entry into any other areas was only permitted if Mara was accompanied by an authorized person.

  (vii) The residence was located apart from the Embassy, approximately 3-5 minutes by car, away from the Embassy;

  (viii) The lease (Exhibit #1 of ECF #30) executed with respect to the rental of premises at issue permitted the landlord to retain rights and responsibilities with respect to the premises including, but not limited to, the following sections of the lease:

  Article Six: <u>Warranties.</u> Article Six states that "The LANDLORD warrants that he is sole and lawful owner of the Premises and that he is duly authorized and able to enter into this Lease and perform its obligations hereunder, and that this Lease and the TENANT's rights hereunder do not and will not conflict with any rights of the LANDLORD or any third party or governmental entity."

  Article Seven: <u>Landlord Rights and Responsibilities.</u> Article Seven gives the landlord the responsibility to maintain the premises and make emergency repairs and to pay taxes, fees and assessments due with respect to the premises.

  Article Eleven: <u>Insurance.</u> Article Eleven requires the landlord to maintain insurance on the premises.

  Article Sixteen: <u>Choice of Law.</u> Article Sixteen states that "The terms of this Lease shall be construed in accordance with the local laws governing the situs of the Premises leased hereunder."

  What is clear is that that Mara was not part of the assigned "mission."

The facts also support Mara's position that the residence was not a premises over which the United States exercised "exclusive or concurrent" jurisdiction for purposes of enforcing the criminal laws. If there were violations of criminal laws against citizens of BK, it was the BK authorities who had jurisdiction to enforce those laws.

## LEGAL ARGUMENT

Mara's circumstances are similar to those in *United States v Morton*, 314 F. Supp. 2d 509 (2004) in which Judge Messitte of this Court dismissed the indictment on the basis that the government lacked jurisdiction to prosecute Morton for conduct he engaged in while working in a civilian capacity for the U.S. Air Force and while visiting a U.S. Government housing facility located off the Air Force Base.

In the *Morton* opinion the record established that Morton frequented a private residence located at U.S. housing quarters owned by a private citizen who had leased it to the Federal Government of Germany.

The lease agreement stated that the property was obtained for the use of the United States Government for the purpose of providing housing to its military personnel and their dependents stationed at the Air Force Base.

Under the terms of the lease, the owner of the property maintained control of it, *inter alia*, servicing and maintaining it, approving any modifications, and reserving the right to conduct inspections. The facts set forth in the *Morton* opinion further noted that while many of the residents of the housing facility work at the Air Force Base, the facility was not physically located on nor was it immediately adjacent to the Base nor was it policed or maintained by the U.S. military.

While not each of the facts relevant and relied upon by the Court in the *Morton* opinion are the same as are present in the instant matter, most are and, when considered in their totality, support a conclusion like that reached by Judge Messitte.

Acknowledging that in *United States v. Erdos*, 474 F2d 157 (1973), the *Morton* opinion set forth the "*Erdos*" test, which states that the Court considers whether the United States enjoys such control over the area that the law should constructively regard it as United States territory" and further found two requirements for jurisdiction. It noted that first, the lands must be "reserved or acquired for the use of the United States," and second, that they must be "under the exclusive or concurrent jurisdiction thereof." At 513.

While Judge Messitte concluded that the housing facility at issue qualified as "land reserved or acquired for the use of the United States" Judge Messitte further determined that the requirement of dominion, i.e. exclusive or concurrent jurisdiction was more problematic and "ultimately defeats jurisdiction." At 513-514.

As Judge Messitte explained "in the absence of an agreement granted exclusive or concurrent jurisdiction to a foreign country, Germany retains territorial jurisdiction within its borders" and continuing noted that "on the record before the Court, there is no evidence that Germany has granted either exclusive or concurrent jurisdiction over the facility." At 514.

Similarly, in the instant matter there is nothing in the record to suggest that BK did not retain territorial jurisdiction over the premises at issue nor that BK granted either exclusive or concurrent jurisdiction to the United States with respect to the premises at issue.

While the Court in *United States v. Corey,* 232 F.2d 1166 (9th. Cir. 2000) affirmed a conviction and rejected a challenge to the extraterritorial jurisdiction of the United States in an opinion with, what it is respectfully suggested, is a much more compelling dissent.  Considering the fact that the 9th Circuit opinion is to be considered for its persuasive value only, it is respectfully submitted that the well-reasoned dissenting opinion is also worthy of consideration, and it is suggested worthy of more weight, for its persuasive value. *Id*. at 1183.  The detailed dissenting opinion provides a compelling framework to support Mara's position as to why the instant prosecution should be halted and, without attempting to summarize the detailed and extensive analysis in the dissents opinion, an opinion which should be considered in its entirety, the conclusion reached in the dissent underscores the problem with the instant prosecution.  The dissenting opinion concludes as follows:

> "Simply put, the onus is not on the courts to provide for jurisdiction in this case. Congress has the power under both the Constitution and international law to extend the reach of our criminal laws beyond the borders of the United States.  The question is not whether jurisdiction should extend extraterritorially, but whether, under this statute, Congress in fact extended the jurisdiction. The answer here is no."

The answer to the question as to whether the United States can lawfully exercise criminal jurisdiction for conduct occurring in a private residence in BK against citizens of BK by a United States citizen who was not part of the government's "mission" in BK is also "NO."

This indictment in this matter should be dismissed.

## CONCLUSION

Mara respectfully requests that this Honorable Court grant Mara's request to dismiss the Indictment.

Respectfully submitted,

MarcusBonsib, LLC

*/s/ Robert C. Bonsib*

_____
ROBERT C. BONSIB
64ll Ivy Lane, Suite ll6
Greenbelt, Maryland 20770
(30l) 44l-3000
Bar No.  00324


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was sent via ECF this 27th day of May, 2025 to Assistant United States Attorneys Brooke Oki and Ranganath Manthripragada Office of the United States Attorney for the District of Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770.

*/s/ Robert C. Bonsib*

_____
ROBERT C. BONSIB