IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. |
| | * | 8:24-cr-00187-LKG |
| FODE SITAFA MARA | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

**UNITED STATES'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW AND TO SET CONDITIONS OF RELEASE**

The United States, by and through the undersigned counsel, submits this opposition to Mara's third attempt to modify his detention status originally ordered by Judge Sullivan on June 6, 2024 (ECF No. 6), by Judge Quereshi on June 14, 2024 (ECF No. 14), and affirmed by Judge Griggsby on November 5, 2024 (ECF Nos. 49 and 50). Mara's instant motion for bail review and to set conditions of release, ECF No. 85, should be denied. No new information has been proffered which changes the fact that there are no release conditions which will reasonably assure the Defendant's appearance and ensure the safety of the community. Mara should remain detained pending his trial which is set to begin next month on October 20, 2025.

### I. LEGAL STANDARD

Mara's instant motion fails to cite a single statute or case in support of his request for bail review. However, based on the factual assertions made, the Government presumes he seeks release from detention pursuant to 18 U.S.C. §§ 3142(f) or (i).

Pursuant to 18 U.S.C. § 3142(f), "a hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a

material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

> Although the statute does not define 'material bearing,' it has been defined to refer to information that actually affects the Court's decision whether to detain the defendant pending trial. Thus, in addition to 'bearing' on—having a logical relation to—detention, the sort of new information capable of reopening a detention hearing must also 'bear' materially—it must relate in some significant or essential way to the decision whether to detain. In addition, new and material information consists of something other than a defendant's own evaluation of his character or the strength of the case against him; instead, it must consist of truly changed circumstances, something unexpected, or a significant event.
>
> *United States v. Krol*, 642 F. Supp. 3d 28, 35 (D.D.C. 2022) (internal citations and

quotations omitted).

18 U.S.C. § 3142(i) instructs that "the judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Courts have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Riggs*, No. 1:23-CR-00022-SAG, 2025 WL 100892, at *1, n.1 (D. Md. Jan. 15, 2025) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)). For release, the defendant bears the burden of demonstrating a compelling reason. *United States v. Creek*, 457 F. Supp. 3d 473, 476 (D. Md. 2020); *see also United States v. Reese*, No. CR 11-2294 RB, 2012 WL 13080791, at *2 (D.N.M. Apr. 2, 2012) ("[t]he defendant has the burden of showing that temporary release is necessary for preparation of the defense under Section 3142(i)").

## II.   ARGUMENT

Mara asserts that, since his last detention hearing, (1) he was attacked in his cell and is now being held in administrative segregation at Chesapeake Detention Facility ("CDF") and (2) he needs to be released to access his legal papers and prepare his defense for trial.

An attack on Mara is inarguably new information. However, Mara has not even attempted to meet his burden to establish how this information materially bears on whether or not there are conditions to assure the safety of the community or limit his flight risk under § 3142(f).

Numerous courts have held that "an inmate's conditions of confinement are immaterial to the issue of whether he is a danger to the community and/or risk of flight." *United States v. Keller*, No. CRIM.A. 07-40016-FDS, 2008 WL 3085199, at *3 (D. Mass. Aug. 4, 2008); *see also United States v. Gustafson*, No. CR 14-27-M-DLC, 2014 WL 3778994, at *2 (D. Mont. July 31, 2014) (quoting and following *Keller*); *United States v. Smith*, No. CR421CV00002BJBHBB8, 2021 WL 4130051, at *2 (W.D. Ky. Sept. 9, 2021) (same). Indeed, Mara "does not cite any case in which a defendant's conditions of confinement constitute a basis for reopening the issue of detention under § 3142(f) . . . ." *United States v. Keo*, No. 22-40061-HLT, 2023 WL 7161159, at *5 (D. Kan. Oct. 31, 2023) (denying defendant's motion for release).

Similarly, isolated segregation has no "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *United States v. Gustafson*, No. CR 14-27-M-DLC, 2014 WL 3778994, at *3 (D. Mont. July 31, 2014) (quoting 18 U.S.C. § 3142(f)(2)).

The Government obtained the incident report on the attack from CDF. *See* Ex. A, CDF May 10, 2025, Incident Report. According to the report, two inmates assaulted Mara in his cell on May 10, 2025. *Id.* at 1. Both assailants were identified, sanctioned, and Mara was placed in,

3

and remains in, administrative segregation after a review board deemed it appropriate for his safety. *Id.* Mara was offered the less restrictive option of protective custody, but he refused and asked to be returned to general population. *Id.* at 2-4.

After the attack, Mara denied any fear for his own safety and stated that he has no enemies he needs to be separated from. *Id.* at 4. According to the warden at CDF, Mara's access to legal resources and his attorney remains the same before and after the attack.

In sum, CDF has taken the necessary steps to ensure Mara's safety since the attack—which occurred over four months ago—and Mara does not believe his safety is in jeopardy. Mara's instant motion does not assert any recent fears or incidents at CDF, nor do the circumstances of the May 10 attack change the fact that consideration of each 18 U.S.C. § 3142 (g) factor continues to support detention.

To briefly summarize the Government's prior arguments (ECF Nos. 11 and 42), the nature and circumstances of the alleged offenses in this case involve Mara using his position of privilege and his victims' position of need to sexually abuse two minor victims for over a year-long period. As the Government outlined in its original detention memorandum, Mara used physical force to rape and abuse both minors in his home. *See* ECF No. 11 at p. 7-9. Mara promised gifts in exchange for sex and ordered the victims to remain silent about what he did to them. *Id.* at 11-12. He sent sexually explicit text messages, Google searched for "sex age 14 or 15 girls" and "sex age 14 or 15 girls porno", and sent an image of a sexual act to one of the minor victims. *Id.* at 4-6. When confronted by federal law enforcement about the sexual abuse allegations, he visited one of the minor victims at her home and took the minor victims' cellphones, which have never been recovered. *Id.* at 12. The offenses also include an obstruction of justice charge for imploring a witness to lie to federal investigators in order to cover up the abuse of Minor Victim 1. *Id.*

The Government's case against Mara is supported by strong evidence in WhatsApp messages, Internet searches, geolocation data, the Mara residence logbooks, DNA evidence on a recovered condom, and the anticipated testimony of numerous witnesses, including the minor victims. *Id.* at 12.

Mara's history and characteristics support detention. He has provided false information to investigators on multiple occasions since the beginning of the investigation. *Id.* at 12-16. In addition to providing false information, he tried to persuade another person to lie for him and took steps himself to dispose of evidence. Mara's history, at least with regard to this case and investigation, is one of coercion, deception, and obstruction of justice in addition to the egregious conduct that the victims accuse him of. *Id.*

If released, Mara poses a danger not only to children in the community but also to the integrity of the pending trial. With any sort of access to the internet or mail upon release, Mara could contact the witnesses and minor victims in this case to make another attempt at instructing them on what to say or financially incentivizing them to lie.

Neither the May 10th incident nor administrative segregation has a material bearing on any of these § 3142(g) factors. *United States v. Spurlock*, No. 3:23-CR-00022-MMD-CLB-1, 2024 WL 4442884, at *5 (D. Nev. Oct. 8, 2024) (Defendant's attack and sustained injury while in pretrial detention was "not material to whether the Court can fashion conditions of release which reasonably assure Defendant's appearance and protect the safety of the community.")

Regarding Mara's request for release to access his legal papers and prepare for trial, his ask is no different from any other detained defendant with a trial date. This is not a compelling reason warranting pre-trial release. Trial in this case was scheduled (and eventually rescheduled) nearly a year ago. *See* ECF No. 51. District courts across the country have rejected similar defense

claims that pretrial release was necessary to enable the defendant to adequately assist with trial preparation. *See, e.g., United States v. Petters*, No. 08-364 (RHK/AJB), 2009 WL 205188, at *2 (D.Minn. Jan. 28, 2009) ("While this [fraud] case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release.... Indeed, accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result."); *United States v. Mukhtar*, No. 2:12-cr-00004-MMD-GWF, 2013 WL 12204792, at * 7 (D. Nev. Feb. 13, 2013) (denying release and holding that although "detention limits Defendant's ability to communicate with his counsel or review . . . evidence as frequently or for as long as he might do if he were out of custody" defendant could adequately prepare his defense with the assistance of "competent counsel and . . . access to support staff . . . .").

Mara has very capable counsel who is well experienced in handling cases with incarcerated defendants. Moreover, CDF does not have restrictions on how often inmates may visit with their attorney and in-person attorney visits are held in a secure, private room. While inmates are not allowed to retain discovery materials for safety and security reasons, during attorney visits the attorney may bring a laptop and legal documents/materials needed for trial preparation. The facility also offers virtual attorney visitation with video visits and, as aforementioned, Mara's administrative segregation allows him the same access to legal resources and counsel. The United States Marshals Service and officials at CDF have accommodated trial preparation at the facility for years and can continue to do so with Mara.

Finally, Mara's motion also regurgitates the same arguments for release made in earlier motions, *i.e.* that he is not a flight risk because he turned himself into federal authorities when he

arrived in the United States from Burkina Faso, his passport is with federal authorities, he has "strong ties" to the United States[1], and that his proposed third party custodian, his brother-in-law— the same individual proposed in prior detention proceedings— lives alone and GPS monitoring would ensure Mara is not around children in the community.

There is no basis to relitigate those positions. This Court and Judge Griggsby analyzed the Section 3142(g) factors and correctly determined—for the same reasons Mara's newly proffered information fails to move the needle—that there was no set of conditions that will reasonably assume the safety of any other person and the community.

### III. CONCLUSION

For the reasons stated above, and for others presented at the September 12 detention hearing, no new information presented materially bears on whether there is any condition or combination of conditions that would assure the safety of the community or the Defendant's future appearance, and the Defendant must therefore remain detained.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: /s/ Brooke Oki
Brooke Oki
Ranganath Manthripragada
Assistant United States Attorneys

Adam Braskich
Trial Attorney

---

[1] Outside of his in-laws, Mara, who was born and raised in Guinea, reported no other family living in Maryland, or the United States at all for that matter, in Pre-trial's report.