IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 24-cr-00187-LKG |
| | * | |
| FODE SITAFA MARA, | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ******* | |

**UNITED STATES'S MOTION FOR ALTERNATIVE TO
LIVE IN-COURT TESTIMONY FOR MINOR VICTIMS
AND FOR APPOINTMENT OF AN ADULT ATTENDANT**

The United States moves the Court for an order that the testimony of Minor Victims 1 and 2 be taken from a separate room and presented via two-way closed-circuit television, in accordance with 18 U.S.C. § 3509(b), or, if the defendant consents as an alternative to the procedure set out in § 3509(b), that the victims' testimony be taken inside the courtroom, with an opaque screen blocking the witnesses and defendant from seeing one another and a one-way camera allowing the defendant to contemporaneously view the witnesses while they testify. Additionally, the United States moves, pursuant to 18 U.S.C. § 3509(i), for an order permitting an adult attendant to accompany the minor victims while they testify.

    **I.**    **Alternative to live in-court testimony**

        **A.  Relevant Law**

Since the Supreme Court's decision in *Maryland v. Craig*, 497 U.S. 836 (1990), federal courts have approved of alternatives to live in-court testimony for minor witnesses, provided the government makes the requisite showing of necessity.

In *Craig*, a case involving the testimony of a child victim, the Supreme Court held that the Sixth Amendment's Confrontation Clause does not "guarantee criminal defendants the *absolute*

right to a face-to-face meeting with witnesses against them at trial." 497 U.S. at 844 (emphasis in original). The Court found, instead, that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*. at 850. The Court found that the Maryland statute that permitted testimony of a child victim by one-way closed-circuit television satisfied the Confrontation Clause because it (1) ensured that the witness gave his or her statements under oath, (2) the witness was subject to cross-examination, and (3) the trier of fact could observe the witness's demeanor. *Id*. at 851.

As the Court explained, "a States's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Craig*, 497 U.S. at 853. Therefore, the Court concluded, "if a State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id*. at 855.

The Court stated that the requisite showing of necessity must be made on a case-by-case basis and set out three factors for the trial court to consider. *Id*. These factors are: (1) whether use of a special procedure is "necessary to protect the particular child witness who seeks to testify," (2) whether the child witness "would be traumatized, not by the courtroom generally, but by the presence of the defendant," and (3) whether "the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, *i.e.*, more than mere nervousness or excitement or some reluctance to testify." *Id*. at 855-56 (internal quotation omitted). The Court did

not specify the minimum level of emotional distress that must be shown, because the Maryland statute at issue, which required that the child witness would suffer "'serious emotional distress such that the child cannot reasonably communicate,'" was "clearly suffic[ient] to meet constitutional standards." *Id*. at 856 (quoting Maryland statute).

"Following the *Craig* decision, 18 U.S.C. § 3509 was promulgated, specifying the procedures to be used in federal courts to allow a child victim to testify via closed circuit." *United States v. Farley*, 992 F.2d 1122, 1124 (10th Cir. 1993). "Of note, § 3509(b) permits 2-way CCTV under certain circumstances, providing a greater ability for defendants to confront witnesses than the *Craig* Court, which upheld the use of 1-way CCTV." *United States v. Abundiz*, 93 F.4th 825, 832 (5th Cir. 2024). Accordingly, the federal courts have uniformly recognized that "if *Craig* upheld the constitutionality of one-way television testimony in an appropriate case, then two-way television testimony, a procedure that even more closely simulates in-court testimony, also passes constitutional muster." *United States v. Etimani*, 328 F.3d 493, 499 (9th Cir. 2003).

As relevant to this motion, 18 U.S.C. § 3509(a)(2)(A) defines a "child" as a "person who is under the age of 18, who is or is alleged to be a victim of a crime of physical abuse, sexual abuse, or exploitation." "The term 'sexual abuse' includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children . . . ." *Id*. at § 3509(a)(8). Section 3509(b) provides as follows:

> **(b) Alternatives to live in-court testimony.--**
>
> > **(1) Child's live testimony by 2-way closed circuit television.--**
> >
> > > **(A)** In a proceeding involving an alleged offense against a child, the attorney for the Government, the child's attorney, or a guardian ad litem appointed under subsection (h) may apply for an order that the child's testimony be taken in a room outside the courtroom and be

> televised by 2-way closed circuit television. The person seeking such an order shall apply for such an order at least 7 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable.
>
> **(B)** The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:
>
>> **(i)** The child is unable to testify because of fear.
>>
>> **(ii)** There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

*  *  *

The words "unable to testify" in § 3509(b)(1)(B) "do not mean that the child must be traumatized to the extent of being unable to utter any responses to questions whatsoever." *United States v. Garcia*, 7 F.3d 885, 889 n. 1 (9th Cir. 1993). "Rather, as was the case with the child witness in *Craig,* the child's emotional trauma must be such that he or she cannot reasonably communicate in the defendant's presence." *Id*. (internal quotation omitted).

Section 3509(b)(1) goes on to provide:

> **(C)** The court shall support a ruling on the child's inability to testify with findings on the record. In determining whether the impact on an individual child of one or more of the factors described in subparagraph (B) is so substantial as to justify an order under subparagraph (A), the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present.

While the Court has the discretion to question the minor, it need not do so. *See*, *e.g.*, *United States v. Fee*, 425 F. App'x 847, 851 n. 4 (11th Cir. 2011) (no abuse of discretion where court declined to directly question the minor victim and ordered CCTV testimony based on mental health counselor, whose testimony the court found "helpful in conveying [the minor victim's]

4

feelings about testifying before the defendants."). Moreover, "[n]either the Confrontation Clause nor § 3509 require the district court to hold an evidentiary hearing prior to ruling on the Government's motion for video testimony." *United States v. Eyle*, 729 F. App'x 513, 514 (9th Cir. 2017).

"If the court orders the taking of testimony by television," § 3509(b)(1)(D) sets out the procedure to be followed:

> [T]he attorney for the Government and the attorney for the defendant . . . shall be present in a room outside the courtroom with the child and the child shall be subjected to direct and cross-examination. The only other persons who may be permitted in the room with the child during the child's testimony are--
>
> (i) the child's attorney or guardian ad litem appointed under subsection (h);
>
> (ii) persons necessary to operate the closed-circuit television equipment;
>
> (iii) a judicial officer, appointed by the court; and
>
> (iv) other persons whose presence is determined by the court to be necessary to the welfare and well-being of the child, including an adult attendant.
>
> The child's testimony shall be transmitted by closed circuit television into the courtroom for viewing and hearing by the defendant, jury, judge, and public. The defendant shall be provided with the means of private, contemporaneous communication with the defendant's attorney during the testimony. The closed circuit television transmission shall relay into the room in which the child is testifying the defendant's image, and the voice of the judge.

Although "the statute requires . . . that the defendant's televised image be transmitted into the room where the child is testifying," "it does not have to be in her direct field of vision while she is facing forward." *United States v. Etimani*, 328 F.3d 493, 495 (9th Cir. 2003).

### B. Argument

Here, the government submits its application to have the minor victims' testimony taken in accordance with § 3509(b)(1)(D), or by an alternate means (behind a screen with one-way

5

CCTV), if agreeable to both parties as an alternative to § 3509(b)(1)(D)'s procedure. The government's application, submitted more the seven days in advance of trial, is timely. 18 U.S.C. § 3509(b)(1)(A). As explained below, the facts of the case and the information contained in the affidavits furnished by the government's experts (attached as Exhibits 1 & 3), demonstrate that if the minor victims were required to testify in the defendant's direct presence, they would be unable to effectively communicate due to fear and emotional trauma.

The minor victims were 13-14 and 15 years old at the time the defendant allegedly sexually abused them. ECF 1 (indictment). At trial, they will be 16 and 17 years old. They have reported that they met the defendant when he moved into the R-12 residence, and very shortly after they met him, he began making inappropriate sexual advances on them. ECF 11 at 6. Over the course of the next year, the defendant regularly touched or attempted to touch them sexually. *Id*. The victims have recounted several specific instances of forcible sexual abuse that serve as the bases for the charges filed under 18 U.S.C. § 2251(c).

In conjunction with this motion, the government submits the affidavits and CVs of two experts who have spent considerable time speaking with the minor victims about their alleged abuse and about their anticipated testimony in Mr. Mara's trial.

Tandis Vaziri-Zanjani, a licensed clinical professional counselor with a master's degree in psychology, serves as a victim advocate with the U.S. State Department. She has received extensive training in recognizing indicators of psychological trauma and working with crime victims, including child victims of sexual abuse. In her role at the State Department, she provides support to crime victims as they navigate the criminal justice system. She was worked with hundreds of victims, many of whom have been minor victims of sexual assault. Ms. Vaziri-Zanjani was assigned to provide support services to the minor victims in this case and has held regular

virtual meetings with them. As she concludes in her affidavit, it is her professional opinion that "being in the defendant's direct presence while testifying would cause the victims so much added fear and emotional trauma that they would be unable to effectively communicate," and that "the defendant's presence would be the predominant reason for their inability to communicate." Ms. Vaziri-Zanjani's affidavit and CV are attached as Exhibits 1 and 2, respectively.

Adelaide Sawadogo is a Burkinabé social worker with over 25 years of experience. In her career, she has provided mental health counseling and other support services to thousands of child victims of sexual exploitation and abuse. In 2019, the U.S. State Department recognized her extraordinary work by presenting her with the prestigious Trafficking in Persons Report Heroes Award.[1] Since May 2024, Ms. Sawadogo has met regularly with the minor victims. She has spoken with them about their abuse, provided them related mental health counseling, and worked to help prepare them emotionally for their trial testimony. She, too, concludes that if the minor victims were to testify in Fode Mara's direct presence, they would experience both fear and emotional trauma that would inhibit them from communicating effectively. Specifically, she opines that Mara has conditioned the victims to do as he wishes and to fear his response if they do not, and that in Mara's direct presence, the victims will fear his response to any incriminating testimony they may offer. Additionally, Ms. Sawadogo opines that as a result of their abuse, the victims have suffered "shame, anxiety, guilt, and depression," all of which will be "greatly exacerbated by having to recount th[eir] abuse in Mara's presence." This fear and emotional trauma, she concludes, will prevent the victims from testifying in Mara's presence. Ms. Sawadogo's affidavit and CV (both English and French versions) are attached as Exhibits 3 and 4, respectively.

---

[1] *See* http://www.tipheroes.org/ad%C3%A9la%C3%AFde-sawadogo/ and https://2017-2021.state.gov/secretary-of-state-michael-r-pompeo-at-the-2019-trafficking-in-persons-report-launch-ceremony/, last visited October 6, 2025.

The government's evidence establishes, through the sworn testimony of two experts, that requiring the minor victims to testify in the defendant's direct, physical presence would cause them fear and "emotional trauma" as that term is used in both 18 U.S.C. § 3509(b)(1)(B)(ii) and *Maryland v. Craig* (497 U.S. at 855). As one appellate court has recognized, "The Court in *Craig* appropriately omitted any narrow descriptions that would have limited the type of trauma necessary to overcome a defendant's confrontation rights," as "[f]ear, shame, guilt, and countless other emotions may overwhelm a child victim's ability to communicate." *Lomholt v. Iowa*, 327 F.3d 748, 754-55 (8th Cir. 2003). Here, the defendant's presence would trigger both fear and emotional trauma that would overwhelm the minor victims' ability to communicate.

Accordingly, the Court should order that the minor victims' testimony be taken in accordance with 18 U.S.C. § 3509(b)(1)(D). If the Court finds that an alternative to live in-court testimony is warranted, the government will agree to an alternate arrangement, should the defend prefer it to the procedure set out in 18 U.S.C. § 3509(b)(1)(D). That is, the minor victims would testify in the courtroom with a physical screen blocking the line of sight between them and the defendant, with a one-way camera running from the witness stand to a laptop at defense table, allowing the defendant to contemporaneously view the victims' testimony. This would in many respects be advantageous to the defendant, in that it would allow the factfinders (the jury) to observe the witnesses directly, and it would allow Mara to remain in the courtroom to directly hear the witnesses' testimony and communicate directly with his attorney (rather than through the electronic "means of private, contemporaneous communication" provided for in § 3509(b)(1)(D)). By agreeing to this arrangement, solely as an alternative to the procedure established in 18 U.S.C. § 3509(b)(1)(D), the defendant would not waive his baseline objection to having the minor victims testify in any alternative fashion.

## II. Adult Attendant

The United States further moves to have Ms. Adelaide Sawadogo appointed as adult attendant and be permitted to sit close to the minor victims while they testify. Section 3509(i) of Title 18 provides as follows:

> **Adult attendant.**--A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child. The court, at its discretion, may allow the adult attendant to remain in close physical proximity to or in contact with the child while the child testifies. The court may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding. An adult attendant shall not provide the child with an answer to any question directed to the child during the course of the child's testimony or otherwise prompt the child. The image of the child attendant, for the time the child is testifying or being deposed, shall be recorded on videotape.

Ms. Sawadogo, as made clear in her affidavit, has played an integral role in helping the minor victims process their abuse and prepare psychologically for their upcoming trial testimony. The government proposes having Ms. Sawadogo seated near the minor victims to provide a comforting presence during their testimony, but not to otherwise engage with them. The government proposes seating Ms. Sawadogo in front of and to the side of the minors, so she remains within their field of vision but does not in any way block the jurors', attorneys', or camera's view of the testifying minor.

## III. Conclusion

This Court should issue an order finding, based on expert testimony, that if the minor victims were to testify in the defendant's direct physical presence, his presence would cause them both fear and emotional trauma that would render them unable to effectively communicate. Accordingly, the Court should order that the minor victim's testimony be taken either (1) in accordance with the procedure set out in 18 U.S.C. § 3509(b)(1)(D), or (2) with a screen blocking the minor victims and defendant from seeing one another and a one-way camera allowing the

9

defendant to contemporaneously view the minor victims as they testify. Additionally, the Court should order, pursuant to 18 U.S.C. § 3509(i), that Ms. Adelaide Sawadogo be permitted to serve as adult attendant to the minor victims and be permitted to sit near minor victims during their testimony.

                                        Respectfully submitted,

                                        Kelly O. Hayes
                                        United States Attorney

By:       /s/
            Adam Braskich
            Department of Justice
            Trial Attorney

            Brooke Oki
            Ranganath Manthripragada
            Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

    I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice of such filing to all users.

                                               /s/ Adam Braskich
                                               Adam Braskich
                                               Trial Attorney