**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Case No. 24-cr-00187-LKG |
| FODE SITAFA MARA, | ) ) | Dated: October 31, 2025 |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

### I.   INTRODUCTION

The Government has filed a motion for an alternative to live in-court testimony (ECF No. 108) and the Guardian *ad litem* filed a motion for safeguards (ECF No. 110), related to the testimony of Minor Victim 1 and Minor Victim 2 (collectively, the "Minor Victims") in this case. These motions are fully briefed. ECF Nos. 108, 110 and 120. The Court held hearings on these motions on October 17, 2025, and October 22, 2025. ECF Nos. 124 and 128. For the reasons that follow, and those stated during the hearings, the Court: (1) **GRANTS-in-PART** the Government's motion for an alternative to live in-court testimony (ECF No. 108) and (2) **GRANTS-in-PART** the Guardian *ad litem*'s motion for safeguards (ECF No. 110).

### II.   BACKGROUND

On June 6, 2024, a Federal Grand Jury sitting in the District of Maryland returned an Indictment against the Defendant, Fodé Sitafa Mara, charging him with the following offenses: (1) Five counts of aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c) (Counts I, II, IV, V, and VI); (2) One count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Count III); and (3) One count of attempted obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) (Count VII). *See* ECF No. 1. A jury trial was held from October 20, 2025, to October 30, 2025. ECF Nos. 126 and 135.

During the jury trial, the two Minor Victims provided testimony. In advance of that testimony, the Court considered and approved certain special procedures (the "Special Procedures") to ensure that the Minor Victims could testify. Prior to approving the Special Procedures, the Court met with the Minor Victims on October 22, 2025, in Chambers, in the

presence of counsel, the Guardian *ad litem*, the Adult Attendant and two interpreters. ECF No. 128. The Court also held hearings on the Government's motion for an alternative to live in-court testimony and the Guardian *ad litem'*s motion for safeguards, related to the testimony of the Minor Victims' testimony on October 17, 2025, and October 22, 2025.

### III. FINDINGS OF FACT

Based upon this evidence, the Court makes the following findings of fact:

Minor Victim 1 is 17 years old. Minor Victim 2 is 16 years old.

Both Minor Victims live in Ouagadougou, Burkina Faso.

The Minor Victims allege that the Defendant sexually abused them on several occasions at a U.S. Embassy residence located in Ouagadougou, Burkina Faso in 2022 and 2023.

During their meeting with the Court, the Minor Victims were poised, soft spoken, attentive, and responsive to the Court's questions. The Minor Victims were accompanied by an interpreter and they appeared to clearly understand the questions of the Court.

Minor Victim 1 informed the Court that she has some general apprehension about testifying during the trial about the sensitive subject-matter of this case. But, Minor Victim 1 and Minor Victim 2 both informed the Court they were prepared to testify about the alleged sexual abuse in this case in the courtroom.

Minor Victim 1 expressed to the Court a fear of having to testify in the presence of the Defendant. Minor Victim 2 also expressed to the Court a fear of having to testify in the presence of the Defendant. In this regard, both Minor Victims informed the Court they did not believe that they could testify, or complete their testimony, if they could see the Defendant while testifying.

Following the meeting with the Minor Victims, the Court held an evidentiary hearing on the pending motions. ECF No. 128. The Court makes the following additional findings of fact based on the testimony and other evidence presented during that hearing:

During the evidentiary hearing, the Government presented the following two witnesses: (1) Tandis Vaziri-Zanjani and (2) Adelaide Sawadogo. *See* ECF No. 108. The witnesses also provided sworn Declarations to the Court.

Ms. Vaziri-Zanjani is a victim's advocate in the United States Department of State. ECF No. 108-1 at 1. Ms. Vaziri-Zanjani has met with the Minor Victims at least 15 times, initially virtually and later in person in October 2025. *Id*; ECF No. 128. Ms. Vaziri-Zanjani informed the Court that:

2

> On multiple occasions, when discussing the upcoming trial with me, both victims, in a fearful and concerned manner, have asked whether they would have to see Fode Mara when testifying, where he would be in proximity to them, whether he would be able to talk to them, and whether he would be able to see them. When revisiting this subject during a recent video meeting, the court-appointed guardian ad litem pressed the victims on how they would feel about seeing the defendant in person. The victims were so unnerved by the question that they exhibited physical trauma responses and were unable to answer the question or continue the conversation. MVl curled up, cried, dropped her head, made no eye contact, and effectively stopped communicating. MV2 leaned back, stopped making eye contact, spoke softly, and offered barely any oral responses to questions.
>
> Based on my interactions with the minor victims, and drawing from my clinical and professional experience, it is my opinion that being in the defendant's direct presence while testifying would cause the victims so much added fear and emotional trauma that they would be unable to effectively communicate, and that the defendant's presence would be the predominant reason for their inability to communicate.

ECF No. 108-1 at 3; *see also* ECF No. 128 (hearing testimony).

Ms. Sawadogo is a Burkinabé social worker, who has more than 25 years of experience related to minor sexual abuse. ECF No. 108-3 at 1; *see* ECF No. 108-4. The Court appointed Ms. Sawadogo as the Adult Attendant for the Minor Victims, and she accompanied the Minor Victims to the United States for the jury trial. ECF No. 124; *see* 18 U.S.C. § 3509(i).

Ms. Sawadogo informed the Court that she first met the Minor Victims in May 2024. ECF No. 108-3 at 1. Ms. Sawadogo also informed the Court that, after several meetings with the Minor Victims, the Minor Victims informed her that the Defendant sexually abused them. *Id*. Ms. Sawadogo also states that in all her meetings with the Minor Victims, both Minor Victims have struggled to discuss the alleged sexual abuse, have experienced shame and fear, have cried and avoided eye-contact. *Id*. at 1-2; ECF No. 128. In addition, Ms. Sawadogo opined that:

> In my professional opinion, Mr. Fode Mara's presence in court would likely create a psychological barrier that would impede the girls' ability to testify. The negative emotions they have experienced as a result of their abuse would be greatly exacerbated by having to recount that abuse in Mara's presence. If forced to do so, there is a

3

> significant risk that the girls will withdraw emotionally and even resort to silence despite their desire to speak out and seek justice. . . . I believe they will be unable to communicate effectively if asked to describe their abuse while in Fode Mara's direct physical presence.
>
> Subjecting the girls to the ordeal of testifying in court in a foreign country with a different socio-cultural landscape will be difficult enough for them.  I am confident that forcing them to testify in front of Mr. Mara will cause them psychological trauma and will constitute a form of secondary victimization that will greatly compound their suffering.

ECF No. 108-3 at 2; *see also* ECF No. 128 (hearing testimony).  And so, Ms. Sawadogo recommended that the Minor Victims be permitted to testify during the trial in a manner that would prevent the Minor Victims from seeing the Defendant during their testimony.  ECF No. 128.

IV.  **STANDARDS OF DECISION**

   **A.  Alternatives To Live In-Court Testimony For Minor Witnesses**

In *Maryland v. Craig*, the Supreme Court of the United States held that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (citation omitted).  But the Supreme Court also recognized that the right to confront witnesses face-to-face is not absolute. *Id*.  Rather, the right to confront witnesses is satisfied, "absent a physical, face-to-face confrontation," where two conditions are met: (1) the denial of such confrontation must be "necessary to further an important public policy" and (2) the "reliability of the testimony" must be "otherwise assured." *Id*. at 850.  And so, the Court should consider the following three factors in determining whether an alternative to live in-court testimony is necessary:

> (1)   Whether use of a special procedure is "necessary to protect the particular child witness who seeks to testify,"
>
> (2)   Whether the child witness "would be traumatized, not by the courtroom generally, but by the presence of the defendant," and
>
> (3)   Whether "the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify."

4

*Id*. at 855-56 (internal quotation omitted).

"Following the *Craig* decision, 18 U.S.C. § 3509 was promulgated, specifying the procedures to be used in federal courts to allow a child victim to testify *via* closed circuit." *United States v. Farley*, 992 F.2d 1122, 1124 (10th Cir. 1993). Section 3509(b) permits 2-way closed-circuit TV "under certain circumstances, providing a greater ability for defendants to confront witnesses than the *Craig* Court, which upheld the use of 1-way CCTV." *United States v. Abundiz*, 93 F.4th 825, 832 (5th Cir. 2024). Relevant here, Section 3509(b)(1) provides that:

> (A) In a proceeding involving an alleged offense against a child, the attorney for the Government, the child's attorney, or a guardian ad litem appointed under subsection (h) may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2-way closed circuit television. The person seeking such an order shall apply for such an order at least 7 days before the trial date, unless the court finds on the record that the need for such an order was not reasonably foreseeable.
>
> (B) The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons: (i) The child is unable to testify because of fear. (ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.
>
> (C) The court shall support a ruling on the child's inability to testify with findings on the record. In determining whether the impact on an individual child of one or more of the factors described in subparagraph (B) is so substantial as to justify an order under subparagraph (A), the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present.

18 U.S.C. § 3509(b)(1).[1]

---

[1] Courts have recognized that the words "unable to testify" in Section 3509(b)(1)(B) "do not mean that the child must be traumatized to the extent of being unable to utter any responses to questions

5

## V. ANALYSIS

### A. An Alternative To Live In-Court Testimony Is Necessary

Applying the above standards to the facts of this case, the Court is satisfied that an alternative to live in-court testimony is necessary to ensure the testimony of the Minor Victims, because: (1) the Minor Victims fear testifying in the presence of the Defendant and (2) there is a significant likelihood that the Minor Victims would experience emotional trauma if required to testify in the presence of the Defendant. *Craig*, 497 U.S. at 850 (citation omitted). And so, for the reasons that follow, the Court: (1) GRANTS-in-PART the Government's motion for an alternative to live in-court testimony (ECF No. 108); and (2) GRANTS-in-PART the Guardian *ad litem*'s motion for safeguards (ECF No. 110).

As an initial matter, the evidence before the Court shows that the Minor Victims fear testifying in the presence of the Defendant. During the meeting with the Court, both Minor Victims informed the Court that they feared testifying in court while in the presence of the Defendant. Notably, each Minor Victim explained to the Court that she did not believe that she could testify, or complete her testimony, if she was able to see the Defendant during the testimony.[2]

The fear expressed to the Court by the Minor Victims is also corroborated by the testimony of Ms. Vaziri-Zanjani and Ms. Sawadogo. During the evidentiary hearing, Ms. Vaziri-Zanjani testified that she believes that the Minor Victims have a fear of testifying in this case, based upon their fear of the Defendant. Ms. Sawadogo also testified that the Minor Victims told her that they had a fear of testifying in the presence of the Defendant. ECF No. 108-3 at 1-2; ECF No. 128. And so, Ms. Sawadogo informed the Court that she believes that the Minor Victims would have difficulty testifying if they could see the Defendant during their testimony. ECF No. 108-3 at 1-2; ECF No. 128.

---

whatsoever." *United States v. Garcia*, 7 F.3d 885, 889 n. 1 (9th Cir. 1993). Rather, "the child's emotional trauma must be such that he or she cannot reasonably communicate in the defendant's presence." *Id*. (internal quotation omitted).

[2] The Minor Victims also made clear to the Court that their fear of testifying was a fear of testfying in the presence of the Defendant, rather than a general fear of testifying. During the Court's meeting with the Minor Victims, the Minor Victims stated that they were prepared to testify in Court, notwithstanding the sensitive nature of their testimony.

6

The evidence before the Court also shows that the Minor Victims would experience significant emotional trauma if required to testify in the presence of the Defendant in this case. In this regard, Ms. Vaziri-Zanjani states in her Declaration that, when asked about how they would feel if they were to testify in front of the Defendant, the Minor Victims "exhibited physical trauma responses." ECF No. 108-1 at 3 (stating that Minor Victim 1 "curled up, cried, dropped her head, made no eye contact, and effectively stopped communicating" and Minor Victim 2 "leaned back, stopped making eye contact, spoke softly, and offered barely any oral responses to questions."). *Id*. And so, Ms. Vaziri-Zanjani concludes that testifying in the Defendant's direct presence would cause the Minor Victims emotional trauma such that they would be unable to effectively communicate. *Id*; ECF No. 128.

Ms. Sawadogo similarly testified that the Minor Victims would experience emotional trauma if required to testify in the presence of the Defendant. ECF No. 128. Notably, Ms. Sawadogo testified that the Minor Victims told her that they were not comfortable testifying in front of the Defendant. *Id*. Ms. Sawadogo also informs the Court in her Declaration that the victims have suffered "shame, anxiety, guilt, and depression," as a result of their sexual abuse, and that these "negative emotions. . . would be greatly exacerbated by having to recount [their] abuse [the Defendant's] presence." ECF No. 108-3 at 2.

Because the evidence before the Court shows that the Minor Victims have a fear of testifying in the presence of the Defendant, and that there is a significant likelihood that the Minor Victims would experience emotional trauma if required to testify under such circumstances, the Court is satisfied that an alternative to live in-court testimony for the two Minor Victims is necessary.

### B. The Special Procedure Will Assures The Reliability Of The Minor Victims' Testimony

Based upon the foregoing, the Court imposes the following special procedures to assure the reliability of the Minor Victims' testimony in this case. *Craig*, 497 U.S. at 857.

- The Minor Victims shall testify live in the courtroom.
- A black, opaque physical screen will be placed between the witness box and the Defense table during the testimony, to block the line of sight between the Minor Victims and the Defendant.

- A one-way closed-circuit TV camera will be placed in front of the witness box to capture the view of the Minor Victim during her testimony.  The camera feed will run from the witness box to a monitor located on the Defense table, where the Defendant will be able to contemporaneously view the Minor Victims' testimony.
- During the Minor Victims' testimony, the Guardian *ad litem* will sit in the well of the courtroom, in a chair to the front-left of the jury box.
- During the Minor Victims' testimony, the Adult Attendant will sit in the well of the courtroom, in a chair to the front-right of the witness box.  There will be a second one-way camera recording the image of the Adult Attendant during the Minor Victims' testimony, allowing the Defendant to contemporaneously view the Adult Attendant. 18 U.S.C. § 3509(i).
- The Adult Attendant is prohibited from providing the Minor Victims with any answer to any question directed to the Minor Victims, and prohibited from otherwise prompting the Minor Victims, during the Minor Victims' testimony.  18 U.S.C. § 3509(i).
- Prior to the testimony of each Minor Victim, the Court will give the following instruction to the jury:

  > Members of the jury, as you can see, the courtroom has been configured differently for the testimony of the next witness. Due to the witness's age, the law allows for special accommodations that shield her from public view to protect her privacy and anonymity. You should not draw any inferences in favor of or against the government or Mr. Mara because of the way the courtroom is set up. You should assess this witness's credibility the same as you would any other witness.

8

**VI.    CONCLUSION**

For the foregoing reasons, and those stated during the hearings, the Court:

(1) **GRANTS-in-PART** the Government's motion for an alternative to live in-court testimony (ECF No. 108); and

(2) **GRANTS-in-PART** the Guardian *ad litem*'s motion for safeguards (ECF No. 110).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge